# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

JULIE VOEKS, JOSEPH FOTE, TROY
NORTON, and MARLENE KANEHL,
Individually and on Behalf of All Others Similarly
Situated,

        Plaintiffs,

   v.

ALLIED INTERSTATE, LLC,

        Defendant.

Case No.: 18-cv-1567

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1.     This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION

2.     The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.     Plaintiff Julie Voeks is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.     Plaintiff Joseph Fote is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.     Plaintiff Troy Norton is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6.     Plaintiff Marlene Kanehl is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

7.     Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiffs a debt allegedly incurred for personal, family, or household purposes.

8.     Each Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

9.     Defendant Allied International Credit Corp. ("Allied") is a foreign corporation with its principal place of business located at 2222-2228 West Northern Avenue, Suite B202, Phoenix, AZ 85021..

10.     Allied does substantial business in Wisconsin and maintains a registered agent for service of process at Corporation Service Company., 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

11.     Allied is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

12.     Allied is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

13.     Allied is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *Facts Related to Plaintiff Voeks*

14.    On or about November 10, 2017, Synchrony Bank ("Synchrony") mailed Plaintiff Voeks a credit card account statement for a "Blaine's Fleet Farm" store-branded credit card with an account number ending in 1529.   A copy of this account statement is attached to this Complaint as Exhibit A.

15.    Upon information and belief, the alleged debt referenced in Exhibit A was incurred for personal, family, or household purposes, including purchases of household goods from Blaine's Fleet Farm stores.

16.    Exhibit A contains the following representations:

| Payment Information | |
|---|---|
| New Balance | $5,323.09 |
| Minimum Payment This Period | $216.00 |
| Amount Past Due | $380.00 |
| Total Minimum Payment Due | $596.00 |
| Payment Due Date | 12/04/2017 |

17.    Exhibit A states that, as of November 10, 2017 Plaintiff Voeks' alleged Blaine's credit card account had a "New Balance" of $5,323.09, with an "Amount Past Due" of $380.00, a "Total Minimum Payment Due" of $596.00," and a "Payment Due Date" of December 4, 2017.

18.    On or about November 28, 2017, Synchrony mailed a debt collection letter to Plaintiff Voeks regarding the same Blaine's credit card account ending in 1529.   A copy of this letter is attached to this Complaint as Exhibit B.

19.    Exhibit B states that "$380.00 is the AMOUNT NOW DUE."

20.    The "AMOUNT NOW DUE" stated in Exhibit B is the "Amount Past Due" stated in Exhibit A.

3

21.    On or about December 12, 2017, Synchrony mailed Plaintiff Voeks a credit card account statement regarding the same Blaine's credit card account ending in 1529. A copy of this account statement is attached to this Complaint as Exhibit C.

22.    Exhibit C contains the following representations:

| Payment Information | |
|---|---:|
| New Balance | $5,503.13 |
| Minimum Payment This Period | $236.00 |
| Amount Past Due | $596.00 |
| Total Minimum Payment Due | $832.00 |
| Payment Due Date | 01/04/2018 |

23.    Exhibit C states that, as of December 12, 2017, Plaintiff Voeks's alleged Blaine's credit card account had a "New Balance" of $5,503.13, with an "Amount Past Due" of $596.00, a "Total Minimum Payment Due" of $832.00," and a "Payment Due Date" of January 4, 2018.

24.    On or about December 14, 2017, Allied mailed Plaintiff Voeks a debt collection letter regarding the same Blaine's credit card account ending in 1529. A copy of this letter is attached to this Complaint as Exhibit D.

25.    Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Plaintiff Voeks inserted by computer.

26.    Upon information and belief, Exhibit D is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

27.    Upon information and belief, Exhibit D was the first letter Defendant sent to Plaintiff regarding this alleged debt.

28.    Exhibit D contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

4

Unless you notify us within 30 days after receiving this letter that you dispute the validity of this debt or any portion thereof, we will assume that this debt is valid. If you notify us in writing within 30 days after receiving this letter that you dispute the validity of this debt, or any portion thereof, we will obtain and mail to you verification of the debt or a copy of a judgment. If you request of us in writing within 30 days after receiving this letter, we will provide you with the name and address of the original creditor, if different from the current creditor.

29.    <u>Exhibit D</u> also contains the following:

Re:    BLAIN S FARM   FLEET
       Creditor: Synchrony Bank   Account No. ************1529
       Total Account Balance: $5,503.13
       Amount Now Due: $832.00

30.    <u>Exhibit D</u> states that, as of December 14, 2017, the alleged debt had a "Total Account Balance" of $5,503.138 and an "Amount Now Due" of $832.00.

31.    <u>Exhibit D</u> is false, deceptive, misleading, and confusing to the unsophisticated consumer.

32.    The unsophisticated consumer has previously received letters from the creditor that indicate the "amount now due" is the "amount past due."

33.    <u>Exhibit D</u> states that the "Amount Now Due" is the "Total Minimum Payment Due" stated in <u>Exhibit C</u>.

34.    There is a difference between the "Amount Past Due" and the "Total Minimum Payment Due." The "Total Minimum Payment Due" is the sum of the "amount past due" and the minimum payment, which is not itself due until the "Payment Due Date."

35.    It is not unusual for banks to hire a debt collector to collect only the "past due" amount, i.e. missed payments and fees, of a credit card balance rather than the whole balance. The Seventh Circuit held in *Barnes v. Allied Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)."

5

36. Thus, under *Barnes*, Allied cannot attempt to collect portions of the balance that are "owed" to Synchrony but are not yet "due." *Barnes*, 493 F.3d at 840 ("only the past due amount, the amount owed [to the debt collector], can be the amount of the debt . . . ."); *see also* 15 U.S.C. § 1692e(2)(a) (prohibiting misrepresentations about the legal status of a debt).

37. Moreover, there is a difference between the minimum amount due and the past due amount, and Allied's use of the phrase "AMOUNT NOW DUE" is confusing and misleading to the unsophisticated consumer because it is inconsistent with Synchrony's use of the phrase "AMOUNT NOW DUE." *See Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1029 n. (S.D. Ind. Mar. 27, 2007) ("Magee had no way of knowing that when AllianceOne said 'minimum amount due' in the Letter it actually meant 'past due amount.'").

38. Upon information and belief, the purpose of Allied's conduct –attempting to collect the "Total Minimum Payment Due" rather than the "Amount Past Due" – is to increase its profits under false pretenses.

39. Upon information and belief, Allied, like most third-party debt collectors, is paid on a contingency basis, retaining a portion of each debt recovered. *See* 78 FR 67848, 67849 (Nov. 12, 2013) ("Typically, third-party collectors are paid on a contingency basis, usually a percentage of recoveries.")

40. Upon information and belief, if a consumer pays Allied an amount greater than the "Amount Past Due," Allied is still entitled to retain a portion of that recovery.

41. Furthermore, it is unclear whether Allied, based on representations included in Exhibit B, sought to collect the "Total Account Balance" or merely the "Amount Now Due."

42.     In addition to specifying the amounts listed above, <u>Exhibit B</u> states: "if you pay the Total Account Balance shown above, an adjustment may be necessary after we receive payment, in which event we will inform you of any remaining balance."

43.     By stating that Allied would continue to contact Plaintiff Voeks even if she paid "the Total Account Balance shown above," <u>Exhibit B</u> is confusing as to the total amount Allied was assigned to collect from her.

44.     The FDCPA requires that, within five days of the initial communication to a consumer regarding an alleged, a debt collector must clearly state the amount of the debt. 15 U.S.C. 1692g(a)(2); *Chuway v. National Action Financial Services Inc.*, 362 F.3d 944, 947-48 (7th Cir. 2004) ("It is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it.").

45.     Plaintiff Voeks was misled and confused by <u>Exhibit D</u>.

46.     The unsophisticated consumer would be misled and confused by <u>Exhibit D</u>.

### *Facts Related to Plaintiff Fote*

47.     On or about September 29, 2017, Synchrony mailed Plaintiff Fote a credit card account statement regarding a CITGO store-branded credit card with a "full account number" ending in 4293.  A copy of this account statement is attached to this Complaint as <u>Exhibit E</u>.

48.     Upon information and belief, the alleged debt referenced in <u>Exhibit E</u> was incurred for personal, family, or household purposes, including purchases of gas and other goods from CITGO gas stations.

7

49. Exhibit E contains the following representation:

| Payment Information | |
| --- | --- |
| New Balance | $383.05 |
| Amount Past Due | $65.00 |
| Total Minimum Payment Due | $115.00 |
| Overlimit Amount | $33.05 |
| Payment Due Date | 10/22/2017 |

50. Exhibit E states that, as of September 29, 2017, Plaintiff Fote's alleged CITGO credit card account had a "New Balance" of $383.05, with an "Amount Past Due" of $65.00, a "Total Minimum Payment Due" of $115.00," and a "Payment Due Date" of October 22, 2017.

51. On or about October 2, 2017, Synchrony mailed a debt collection letter to Plaintiff Fote regarding the same CITGO credit card with an account number ending in 4293. A copy of this letter is attached to this Complaint as Exhibit F.

52. Exhibit F states that "$65.00 is the AMOUNT NOW DUE."

53. The "AMOUNT NOW DUE" stated in Exhibit F is the "Amount Past Due" stated in Exhibit E.

54. On or about October 30, 2017, Synchrony mailed Plaintiff Fote a credit card account statement regarding the same CITGO credit card with an account number ending in 4293. A copy of this account statement is attached to this Complaint as Exhibit G.

55. Exhibit G contains the following representations:

| Payment Information | |
| --- | --- |
| New Balance | $430.52 |
| Amount Past Due | $115.00 |
| Total Minimum Payment Due | $167.00 |
| Overlimit Amount | $80.52 |
| Payment Due Date | 11/22/2017 |

56. Exhibit G states that, as of October 30, 2017, Plaintiff Fote's alleged CITGO credit card account with an account number ending in 4293 had a "New Balance" of $430.52,

8

with an "Amount Past Due" of $115.00, a "Total Minimum Payment Due" of $167.00," and a "Payment Due Date" of November 22, 2017.

57.     On or about November 1, 2017, Allied mailed Plaintiff Fote a debt collection letter regarding his CITGO credit card with an account number ending in 4293. A copy of this letter is attached to this Complaint as Exhibit H.

58.     Upon information and belief, Exhibit H is a form letter, of substantially the same form as Exhibit D, with the information specific to Plaintiff Fote inserted by computer.

59.     Upon information and belief, Exhibit H was the first letter Defendant sent to Plaintiff regarding this alleged debt.

60.     Exhibit H contains the following representations:

> Re:    CITGO Rewards® Card
>        Creditor: Synchrony Bank   Account No. ***********4293
>        Total Account Balance: $430.52
>        Amount Now Due: $167.00

61.     Exhibit H states that, as of November 1, 2017, the alleged debt had a "Total Account Balance" of $430.52 and an "Amount Now Due" of $167.00.

62.     Exhibit H states that the "Amount Now Due" is the "Total Minimum Payment Due" stated in Exhibit G.

63.     Furthermore, it is unclear whether Allied, based on representations included in Exhibit H, sought to collect the "Total Account Balance" or merely the "Amount Now Due."

64.     Plaintiff Fote was misled and confused by Exhibit H.

65.     The unsophisticated consumer would be misled and confused by Exhibit H.

9

*Facts Related to Plaintiff Norton*

66.     On or about September 15, 2017, Synchrony mailed Plaintiff Norton a credit card account statement regarding a Walmart store-branded credit card with a "full account number" ending in 3531.  A copy of this account statement is attached to this Complaint as <u>Exhibit I</u>.

67.     Upon information and belief, the alleged debt referenced in <u>Exhibit I</u> was incurred for personal, family, or household purposes, including purchases of household goods from Walmart stores.

68.     <u>Exhibit I</u> contains the following representation:

| Payment Information | |
| --- | --- |
| New Balance | $576.13 |
| Amount Past Due | $85.00 |
| Total Minimum Payment Due | $137.00 |
| Overlimit Amount | $76.13 |
| Payment Due Date | 10/08/2017 |

69.     <u>Exhibit I</u> states that, as of September 15, 2017, Plaintiff Norton's alleged Walmart credit card account had a "New Balance" of $576.13, with an "Amount Past Due" of $85.00, a "Total Minimum Payment Due" of $137.00," and a "Payment Due Date" of October 8, 2017.

70.     On or about October 2, 2017, Synchrony mailed a debt collection letter to Plaintiff Norton regarding the same Walmart credit card with an account number ending in 3531.  A copy of this letter is attached to this Complaint as <u>Exhibit J</u>.

71.     <u>Exhibit J</u> states that "$85.00 is the AMOUNT NOW DUE."

72.     The "AMOUNT NOW DUE" stated in <u>Exhibit J</u> is the "Amount Past Due" stated in <u>Exhibit I</u>.

73.     On or about October 16, 2017, Synchrony mailed Plaintiff Norton a credit card account statement regarding the same Walmart credit card with an account number ending in 3531.  A copy of this account statement is attached to this Complaint as <u>Exhibit K</u>.

74. <u>Exhibit K</u> contains the following representations:

| Payment Information | |
|---|---|
| New Balance | $626.17 |
| Amount Past Due | $137.00 |
| Total Minimum Payment Due | $194.00 |
| Overlimit Amount | $126.17 |
| Payment Due Date | 11/08/2017 |

75. <u>Exhibit K</u> states that, as of October 16, 2017, Plaintiff Norton's alleged Walmart credit card account with an account number ending in 3531 had a "New Balance" of $626.17, with an "Amount Past Due" of $137.00, a "Total Minimum Payment Due" of $194.00," and a "Payment Due Date" of November 8, 2017.

76. On or about October 18, 2017, Allied mailed Plaintiff Norton a debt collection letter regarding the same Walmart credit card with an account number ending in 3531. A copy of this letter is attached to this Complaint as <u>Exhibit L</u>.

77. Upon information and belief, <u>Exhibit L</u> is a form letter, of substantially the same form as <u>Exhibits D & H</u>, with the information specific to Plaintiff Norton inserted by computer.

78. Upon information and belief, <u>Exhibit L</u> was the first letter Defendant sent to Plaintiff regarding this alleged debt.

79. <u>Exhibit L</u> contains the following representations:

Re:     Walmart Credit Card Account
        Creditor: Synchrony Bank   Account No. ************3531
        Total Account Balance: $626.17
        Amount Now Due: $194.00

80. <u>Exhibit L</u> states that, as of October 18, 2017, the alleged debt had a "Total Account Balance" of $626.17 and an "Amount Now Due" of $194.00.

81. <u>Exhibit L</u> states that the "Amount Now Due" is the "Total Minimum Payment Due" stated in <u>Exhibit K</u>.

11

82. Furthermore, it is unclear whether Allied, based on representations included in Exhibit L, sought to collect the "Total Account Balance" or merely the "Amount Now Due."

83. Plaintiff Norton was misled and confused by Exhibit L.

84. The unsophisticated consumer would be misled and confused by Exhibit L.

### Facts Related to Plaintiff Kanehl

85. On or about November 5, 2017, Synchrony mailed Plaintiff Kanehl a credit card account statement regarding a La-Z-Boy store-branded credit card with a "full account number" ending in 4496. A copy of this account statement is attached to this Complaint as Exhibit M.

86. Upon information and belief, the alleged debt referenced in Exhibit M was incurred for personal, family, or household purposes, including purchases of household goods from La-Z-Boy stores.

87. Exhibit M contains the following representation:

| Payment Information | |
|---|---|
| New Balance | $529.26 |
| Minimum Payment This Period | $56.00 |
| Amount Past Due | $66.00 |
| Total Minimum Payment Due | $122.00 |
| Payment Due Date | 11/28/2017 |

88. Exhibit M states that, as of November 5, 2017, Plaintiff Kanehl's alleged La-Z-Boy credit card account had a "New Balance" of $529.26, with an "Amount Past Due" of $66.00, a "Total Minimum Payment Due" of $122.00," and a "Payment Due Date" of November 28, 2017.

89. On or about October 2, 2017, Synchrony mailed a debt collection letter to Plaintiff Kanehl regarding the same La-Z-Boy credit card with an account number ending in 4496. A copy of this letter is attached to this Complaint as Exhibit N.

90.    Exhibit N states that "$66.00 is the AMOUNT NOW DUE."

91.    The "AMOUNT NOW DUE" stated in Exhibit N is the "Amount Past Due" stated in Exhibit M.

92.    On or about December 5, 2017, Synchrony mailed Plaintiff Kanehl another credit card account statement regarding the same La-Z-Boy credit card with an account number ending in 4496.  A copy of this account statement is attached to this Complaint as Exhibit O.

93.    Exhibit O contains the following representations:

| Payment Information | |
|---|---:|
| New Balance | $580.71 |
| Minimum Payment This Period | $58.00 |
| Amount Past Due | $122.00 |
| Total Minimum Payment Due | $180.00 |
| Payment Due Date | 12/28/2017 |

94.    Exhibit O states that, as of December 5, 2017, Plaintiff Kanehl's alleged La-Z-Boy credit card account with an account number ending in 4496 had a "New Balance" of $580.71, with an "Amount Past Due" of $122.00, a "Total Minimum Payment Due" of $180.00," and a "Payment Due Date" of December 28, 2017.

95.    On or about December 7, 2017, Allied mailed Plaintiff Kanehl a debt collection letter regarding the same La-Z-Boy credit card with an account number ending in 4496.  A copy of this letter is attached to this Complaint as Exhibit P.

96.    Upon information and belief, Exhibit P is a form letter, of substantially the same form as Exhibits D, H & L, with the information specific to Plaintiff Kanehl inserted by computer.

97.    Upon information and belief, Exhibit P was the first letter Defendant sent to Plaintiff regarding this alleged debt.

13

98.    Exhibit P contains the following representations:

Re:    LA Z BOY FURNITURE GALLERIES
       Creditor: Synchrony Bank   Account No. ************4496
       Total Account Balance: $580.71
       Amount Now Due: $180.00

99.    Exhibit P states that, as of October 18, 2017, the alleged debt had a "Total Account Balance" of $580.71 and an "Amount Now Due" of $180.00.

100.   Exhibit P states that the "Amount Now Due" is the "Total Minimum Payment Due" stated in Exhibit O.

101.   Furthermore, it is unclear whether Allied, based on representations included in Exhibit P, sought to collect the "Total Account Balance" or merely the "Amount Now Due."

102.   Plaintiff Kanehl was misled and confused by Exhibit P.

103.   The unsophisticated consumer would be misled and confused by Exhibit P.

### *The FDCPA*

104.   The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations

14

of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

105.    Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15

U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

106.    15 U.S.C. § 1692d generally prohibits "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

107.    15 U.S.C. § 1692d(5) specifically prohibits "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

108.    15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

109.    15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

110.    15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

111.    15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

112.    15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, chare, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

113.    15 U.S.C. § 1692g states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

114.    The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

115.    While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

17

### *The WCA*

116.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

117.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 **n.**15, 596 N.W.2d 786 (1999) (citations omitted).

118.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

119.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

120.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

121.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and

18

injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

122.    Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

123.    Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

124.    Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

125.    Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

126.    Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

127.    Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

19

## COUNT I – FDCPA

128.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

129.     Defendant misrepresented the "Amount Now Due" on Plaintiffs' Synchrony accounts. *Compare* Exhibits B, F, J, & N *with* Exhibits D, H, L, & P.

130.     Defendant violated 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – WCA

131.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

132.     Defendant misrepresented the "Amount Now Due" on Plaintiffs' Synchrony accounts. *Compare* Exhibits B, F, J, & N *with* Exhibits D, H, L, & P.

133.     Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT III - FDCPA

134.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

135.     Exhibits D, H, L, & P do not clearly state the amount Allied was seeking to collect from Plaintiffs; it is unclear whether Allied was seeking the "Total Account Balance" or merely the "Amount Now Due."

136.     Defendant violated 15 U.S.C. § 1692e, 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT IV - WCA

137.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

138.     Exhibits D, H, L, & P do not clearly state the amount Allied was seeking to collect from Plaintiffs; it is unclear whether Allied was seeking the "Total Account Balance" or merely the "Amount Now Due."

139.     Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

140.     Plaintiffs bring this action on behalf of a class, consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by Exhibits D, H, L, & P to the complaint in this action, (c) seeking to collect a credit card account debt owed to Synchrony Bank, (d) which debt was incurred for personal, family or household purposes (e) between October 4, 2017 and October 4, 2018, inclusive, (f) that was not returned by the postal service.

141.     The Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of the Class.

142.     There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA and the WCA.

143.     Plaintiffs' claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

Case 2:18-cv-01567-WED    Filed 10/04/18    Page 21 of 22    Document 1

144. Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

145. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

146. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  October 4, 2018

**ADEMI & O'REILLY, LLP**

By:     /s/ Mark A. Eldridge
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com

22